IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DALE SABO, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. ) |
| WELLPET, LLC, | ) ) |
| Defendant. | ) ) |

## CLASS ACTION COMPLAINT

This class action stems from Defendant's marketing and selling of Wellness brand pet food and other pet foods with an unqualified representation that they are "Made in the USA," when the products in fact contain substantial ingredients sourced from foreign countries. Plaintiff brings this class action under the laws of Illinois and the similar laws of eight other states on his own behalf and on behalf of all others similarly situated.

### I.  INTRODUCTION

1.  In determining whether a product may bear a label with the unqualified statement "Made in the USA" without violating Illinois unfair trade practices laws, Illinois law directs the Court to look to federal law under the Federal Trade Commission Act, including the regulations and decisions of the Federal Trade Commission and the federal courts. 815 ILCS 505/2 (requiring that "consideration

1

shall be given to the interpretations of the Federal Trade Commission" concerning unfair or deceptive trade practices. 815 ILCS 505/2). "In determining whether a given course of conduct is unfair, we observe that the Consumer Fraud Act mandates that 'consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." Robinson v. Toyota Motor Credit Corp., 775 N.E.2d 951, 960 (Ill. 2002).

    2.    The FTC regulations divide domestic-source representations into two types: qualified and unqualified. Qualified statements typically say something like "Made in the USA from domestically and foreign-sourced ingredients." Unqualified statements, on the other hand, simply say "Made in America" or "Made in the USA" without any further explanation, and so invite a higher level of scrutiny. The Federal Trade Commission has defined the unqualified term "Made in the USA" to mean that the product is "all or virtually all" made in the United States. The phrase "all or virtually all" means, according to the FTC, that "all significant parts and processing that go into the product must be of U.S. origin, that is, the products should contain no—or negligible—foreign content." Even if foreign-sourced parts or ingredients constitute only a small percentage of a product, the FTC does not allow a company to make an unqualified claim of U.S. origin ("Made in the USA") if those parts or ingredients are significant parts or ingredients. In such cases, only a qualified claim

of domestic source is permissible, such as "Made in the USA from domestic and foreign ingredients."

3. A sterling example of this principle is contained in a November 20, 2015 FTC staff letter to an attorney representing Niall Luxury Goods, a watch-manufacturer that made an unqualified claim that its watches were made in the U.S. The Niall watches contained a movement manufactured in Switzerland, and the movement was a small percentage of the overall product in terms of content and price. The FTC confirmed that an unqualified representation of domestic origin was impermissible in these circumstances, reasoning: "In this case, though the cost of a Swiss movement may be small relative to Niall's overall U.S. manufacturing costs, without a movement, a watch cannot tell time. Therefore, movements are essential to the function of a watch." The FTC concluded that the remedial steps taken by Niall, which were to change the domestic-source representation from unqualified to qualified, were sufficient and no further action was needed:

> Accordingly, to avoid deceiving consumers, Niall implemented a remedial action plan to qualify its representations. This plan included:
>
> (1) updating claims on watch dials and bezels to clarify that the watches contain Swiss parts;
>
> (2) updating websites and social media; and
>
> (3) adopting new compliance measures, including legal review of future marketing materials and a coordinated media plan.

> Based on your actions and other factors, the staff has decided not to pursue this investigation any further.

This FTC letter, published for guidance, is entirely consistent with other guidance published by the FTC. See, e.g., Spray Pal Closing Letter, (Oct 1, 2015) (Unqualified claim deceptive for diaper cleaning device because clip which held diaper to device was imported "although the cost of the clip may be small relative to the overall manufacturing costs, the clip is essential to the function of the Spray Pal product."); Gorilla Glue Closing Letter (June 5, 2015) (Unqualified claim deceptive for glue because "key raw material in the product that gives it its adhesive quality is sourced overseas."); Leggett & Platt, Inc. Closing Letter (Feb 25, 2016) (Unqualified claim deceptive on adjustable desk because "the imported motor and electronics are essential to the desks function."); Weiss Watch Co., Inc. Closing Letter (Dec. 7, 2015) (Unqualified claim deceptive where "though the cost of the Swiss parts may be small relative to Weiss's overall U.S. manufacturing costs, the imported parts constitute the key parts of the watches' movement, and are essential to the watches' function."); Hawke Enterprises Inc. Closing Letter (Nov. 14, 2012) (Unqualified claim for floor cleaners deceptive where they contained Mexican motors.). In the same way that a watch cannot be a watch without a movement, glue cannot be glue without its adhesive ability, an adjustable desk cannot be an adjustable desk without its adjustment mechanism, a diaper cleaner cannot be a diaper cleaner without its essential clip, and a floor cleaner cannot be a floor cleaner without its essential

motor, a vitamin supplement cannot be a vitamin supplement without the vitamins it is supposed to contain.

4. Defendant makes an unqualified representation that its products are domestically-sourced. Its labels say "Made in the U.S.A." without qualification. Yet Defendant's products contain Vitamin C (in the form of ascorbic acid) that is foreign-sourced. Because vitamins are normally bought in "packs" from suppliers, Defendant's products likely contain other vitamins that are sourced outside the United States.

## II. PARTIES, JURISDICTION, AND VENUE

5. Plaintiff Dale Sabo is an adult resident citizen of Kane County, Illinois, which is within this district and division.

6. Defendant WellPet, LLC, ("WellPet") is a Delaware Limited Liability Corporation with its principal place of business in Tewksbury, Massachusetts.

7. Because there is diversity between Plaintiff and the Defendant, and because the aggregate amount in controversy for the class claims exceeds $5,000,000, exclusive of interest and costs, diversity jurisdiction exists under 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005.

8. According to the package label of the products, Defendant WellPet is the manufacturer of Wellness dog and cat food, Eagle Pack dog food, and Holistic Select dog food.

9. Defendant sold, and Plaintiff bought, the Wellness dog food product in this district and division, so venue is appropriate under 28 U.S.C. § 11391(b)(2) as a substantial part of the conduct giving rise to this action occurred in this district and division.

### III. Factual Background

10. On multiple occasions between November 2014 and July 2016, Plaintiff Dale Sabo purchased Wellness Large Breed Puppy and Adult Foods at Petco stores in South Elgin, Illinois and Batavia, Illinois.

11. The label of Defendant's Wellness brand dog food and its other pet foods state that the products are "Made in the U.S.A."



12. This representation of the USA as the country of origin is deceptive because Defendant's products contain ingredients sourced in foreign countries. These foreign-sourced ingredients include vitamins and minerals, such as, without limitation, vitamin C (ascorbic acid). The pet foods are not "all or virtually all" made in the USA, and the vitamins and minerals sourced from outside the USA are a "significant part" of the products. They are a "significant part" because all of these

6

products are labeled with a core product description "with added vitamins, minerals & trace nutrients for wellbeing," or a similarly worded description.



Therefore, under the guidelines of the Federal Trade Commission, the use of the phrase "made in the USA" on the labels is deceptive because the added vitamins and minerals are an essential aspect of the product.

13. Defendant placed these misleading and inaccurate labels on the products with the intention that Plaintiff and other consumers rely on them.

14. Plaintiff is an unsophisticated consumer who purchased the product for household use.

15. Plaintiff is also a patriotic American who prefers to purchase goods made in the United States rather than imported goods, and who is willing to pay a premium for American-made goods. In this regard, Plaintiff is similar to other American consumers who are willing to pay more for American-made goods.

16. A 2015 survey by Consumer Reports magazine found that almost 80% of Americans are willing to pay more for American-made goods.

> This month . . . we examine one of the nation's most ubiquitous labels: Made in America. It's a phrase that wields real power in the marketplace. A recent Consumer Reports survey found that 77% of Americans are willing to pay more for a product that has the claim.

"What does the 'Made in America' label really mean?" Consumer Reports, July 2015, available at www.consumerreports.org/cro/magazine/2015/07/from-our-president-july-2015/index.htm.

17. Research by the American Marketing Association, published in the Journal of International Marketing, confirms these findings:

> Our findings show that consumers not only prefer and assign a higher value to branded products from a country of origin with a favorable country image but also are willing to spend more money to obtain them.

"Consumers will pay more for a 'Made in the USA' label," Journal of International Marketing, March 2016, summary available at www.ama.org/publications/JournalOfInternationalMarketing/Pages/pr_jim.10.0140.aspx.

18. Plaintiff Dale Sabo saw the misleading labels prior to purchasing the items and relied upon them, believing that the flag and "made in the USA" label meant that the items met the legal standard to bear such labels.

19. Plaintiff has suffered damages because he paid more for the products than they were actually worth. He believed the products to be made in the USA and relied upon that in his purchase decision. Recalls of pet food, often because of

8

adulterated foreign-sourced ingredients, have been rampant in recent years. These recalls have made the news and resulted in public desire for safe pet foods with ingredients sourced in the United States. Recalls as recent as this month were issued because of contamination with listeria bacteria, salmonella, propylene glycol (an ingredient not approved for cat foods because of toxicity), mold, Amantadine (an antiviral human drug not approved for use in animal food), elevated and toxic levels of Vitamin D, heavy metals, and others. An incomplete list of these recent headline-making recalls may be found at http://truthaboutpetfood.com/category/pet-food-recalls/

20. In addition, Plaintiff was damaged in the fact that he did not receive the benefit of the bargain he intended to make in purchasing Defendant's products, which included supporting American jobs, American manufacturing, and American companies who do things the right way in making products legally authorized to be labeled "Made in U.S.A."

21, Defendant sells other pet foods, including dog foods and cat foods, that also are labeled "Made in the U.S.A." but contain ingredients manufactured and sourced in foreign countries. These foreign-sourced ingredients include, without limitation, vitamin C. Those products also were not "all or virtually all" made in the USA. Like the products Plaintiff purchased, those products contained significant ingredients sourced outside the USA.

22. Plaintiff will continue to be damaged by Defendant's false marketing and labeling of products as made in the USA. Defendant markets pet foods under multiple brands with a wide variety of different ingredients. Because of Defendant's misrepresentations, Plaintiff cannot know whether labels claiming to be made in the USA are accurate on any of these products.

### IV. Class Allegations

23. Plaintiff brings this action on his own behalf and on behalf of others similarly situated as a multi-state class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class which Plaintiff seeks to represent is composed of and defined as:

> All persons in states which have enacted the Uniform Deceptive Trade Practices Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, or any act similar in substance, who, within the applicable limitations period, have purchased pet foods manufactured and marketed by Defendant and labeled "Made in the U.S.A." or were otherwise labeled as "USA-sourced" items.

The Illinois laws in question are 815 ILCS 510/2 and 815 ILCS 505/2. The other states with similar if not identical laws are California, Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. See Cal. Bus. & Prof. Code § 17200, et seq.; Fla. Stat. § 501.201 et seq.; Mich. Stat. §445.901 et seq.; Minn. Stat. §§325F.68-325F.70; Mo. Rev. Stat § 407.010 et seq.; N.J. Stat. Ann. § 56:8-1 et seq.; N.Y. Gen. Bus. Law § 349 et seq.; and Wash. Rev. Code §19.86.010 et seq. In Mullins v. Direct Digital, LLC, the plaintiff sought to represent a similar class,

including all nine states that Plaintiff seeks to include here. 795 F.3d 654 (7th Cir. 2015). The Seventh Circuit affirmed certification of the multi-state class alleging violations of these laws in Mullins. Id.

24. Alternatively, if the Court does not certify the above class, Plaintiff seeks to represent the following Illinois-only class:

> All Illinois residents who, within the applicable limitations period, have purchased pet foods manufactured and marketed by defendant and labeled "Made in the U.S.A." or were otherwise labeled as "USA-sourced" items.

25. This action has been brought and may be properly maintained as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure, and satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements thereof.

26. Defendant markets its pet foods in major retail stores throughout the United States, including in all nine states included in the class definition, as well as on the Internet. Therefore, the plaintiff class is so numerous that the individual joinder of all members is impracticable. The class meets the numerosity requirement of Fed. R. Civ. Proc. 23(a)(1).

27. Common questions of law and fact, including whether Defendant's pet foods contain ingredients manufactured and sourced from foreign countries, exist in this case. The class meets the commonality requirement of Fed. R. Civ. Proc. 23(a)(2).

28. Plaintiff's claims are typical of the claims of the members of the class under Fed. R. Civ. P. 23(a)(3). The Plaintiff and all members of the class sustained damages arising out of Defendant's course of conduct in violation of the law as complained herein. The losses of each member of the class were caused directly by defendant's wrongful conduct in violation of the law as alleged herein.

29. The Plaintiff named herein will fairly and adequately protect the interests of the class as required by Fed. R. Civ. P. 23(a)(4). Plaintiff has no interests which are adverse to the interests of absent class members. Plaintiff, like all class members, purchased pet foods falsely labeled "Made in the U.S.A."

30. A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. Proc. 23(b) because individual joinder of all class members is impracticable. Furthermore, because the damages suffered by each individual member of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual class members to redress the wrongs done to them. Individual litigation would likewise burden the court system to a much greater degree than a class action, and would present the potential for inconsistent or contradictory judgments. By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each class member.

## V. Claims for Relief

### Count 1: Violation of Uniform Deceptive Trade Practices Act

31. Plaintiff incorporates by reference paragraphs 1-30 of this Complaint as if fully set forth herein.

32. The Uniform Deceptive Trade Practices Act, codified in Illinois at 815 ILCS 510/1 et seq., makes it a deceptive trade practice to use "deceptive representations or designations of geographic origin in connection with goods or services." 815 ILCS 510/2(a)(4).

33. Defendant violated 815 ILCS 510/2(a)(4) by labeling and marketing its pet foods as made in the USA when, in fact, they were not.

34. Defendant has violated this section repeatedly and willfully, intentionally using "Made in the U.S.A." labels to confuse and defraud shoppers.

35. Plaintiff, and the class he represents, are entitled to injunctive relief as well as costs and attorneys' fees under 815 ILCS 510/3.

### Count 2: Violation of Illinois Consumer Fraud and Deceptive Business Practices Act

36. Plaintiff incorporates by reference paragraphs 1-30 of this Complaint as if fully set forth herein.

37. 815 ILCS 505/2 makes it an unfair or deceptive act or practice to engage in any activity that violates 815 ILCS 510/2. Because Defendant violated 815 ILCS 510/2(a)(4), it also violated 815 ILCS 505/2.

38 Under 815 ILCS 505/2, the "Made in the USA" statements by Defendant constituted a deceptive act or practice. The "Made in the USA" statements were made and the purchases occurred in trade or commerce. Defendant intended that Plaintiff and the rest of the class rely on the statements. The deception caused damage to Plaintiff and the class.

39. Plaintiff, and the class he represents, are entitled under this act to actual damages calculated by difference in price between the product as sold and what it would have been worth had it not been deceptively advertised, punitive damages, and attorneys' fees.

## Count 3: Claims Under Similar State Statutes

40. Plaintiff incorporates by reference paragraphs 1-39 of this Complaint as if fully set forth herein.

41. Other states have deceptive trade practices acts which, as they apply to the facts at issue here, are in substance the same as the Acts referenced in Counts 1 and 2, prohibiting the conduct detailed herein. The other states with similar if not identical law are California, Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. See Cal. Bus. & Prof. Code § 17200, et seq.; Fla. Stat.

§ 501.201 et seq.; Mich Stat. §445.901 et seq.; Minn Stat. §§325F.68-325F.70; Mo. Rev. Stat § 407.010 et seq.; N.J. Stat. Ann. § 56:8-1 et seq.; N.Y. Gen. Bus. Law § 349 et seq.; and Wash. Rev. Code §19.86.010 et seq. On behalf of the plaintiff class, Plaintiff asserts claims under those statutes as well for class members residing in those states.

42. On behalf of the out-of-state class members, Plaintiff seeks actual damages, punitive damages, attorney's fees, and costs.

### Count 4: Unjust Enrichment

43. Plaintiff incorporates by reference paragraphs 1-30 of this Complaint as if fully set forth herein.

44. As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiff and the Class.

45. Because Defendant's retention of this unjust benefit violates fundamental principles of justice, equity, and good conscience, Defendant should be forced to disgorge all profit unjustly gained from its illegal activites.

### PRAYER FOR RELIEF

Based on the foregoing, Plaintiff prays for the following relief:

A) An order certifying this as a multi-state class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B) An order appointing Plaintiff's counsel as Class Counsel to represent the interests of the class;

C) After trial, an injunction ordering Defendant to stop its violations of law as alleged herein;

D) After trial, an award of compensatory and punitive damages;

E) An award of costs, including reasonable attorneys' fees; and

F) Such further or different relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by struck jury on all counts.

Respectfully Submitted,

/s/ John E. Norris
John E. Norris
One of the Attorneys for Plaintiff

**OF COUNSEL:**
DAVIS & NORRIS LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com
dware@davisnorris.com
krivers@davisnorris.com

Julie Simpson
SIMPSON LAW GROUP
100 Illinois Street
St. Charles, IL 60174
Telephone: 630.797.2222
jsimpson@simpsonlawgroup.net

Case: 1:16-cv-08550 Document #: 1 Filed: 08/31/16 Page 17 of 18 PageID #:17