IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Dale Sabo, on behalf of himself )
and all others similarly )
situated, )
 )
        Plaintiff, )
 )
 )
  v. ) No. 16 C 8550
 )
Wellpet, LLC )
 )
        Defendant. )
 )
 )

Memorandum Opinion and Order

In this action, plaintiff Dale Sabo seeks to represent a multi-state class of consumers who bought pet food products he claims defendant falsely labeled as being "Made in the USA." Plaintiff asserts that vitamins and minerals in the pet food are sourced from outside the United States, rendering the "Made in the USA" claim false and deceptive. He alleges that the claim violates the Uniform Deceptive Trade Practices Act, codified in Illinois as 815 ILCS 510/2(a)(4); the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2; similar statutes in the states of California, Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington; and the common law of unjust enrichment.

Defendant has moved to dismiss the first amended complaint ("FAC") and to strike its class allegations. For the following reasons, the motion to dismiss is granted and the motion to strike is denied as moot.

I.

Plaintiff alleges that between November of 2014 and July of 2016, he purchased Wellness Large Breed Puppy and Adult Foods from a retailer in Illinois. The packaging of those products and others defendant manufactures contains the statement, "Made in the U.S.A." Yet, the products contain vitamins and minerals that are sourced from outside the United States. In particular, plaintiff alleges that vitamin C in the form of ascorbic acid (which is how the ingredient is identified on the label), has not been produced in the United States since at least 2009, when the last vitamin C plant in the country closed. Plaintiff further alleges that because vitamins "are normally bought in 'packs' from suppliers," it is likely that other vitamins are also sourced outside the United States.

Plaintiff alleges that he places a premium on American-made products and is willing to pay more for them, and that a majority of Americans feels the same. He further asserts that pet food recalls and reports of adulterated pet foods linked to foreign-sourced ingredients have, in recent years, enhanced consumers' desire for pet foods containing U.S.-sourced

ingredients. In plaintiff's view, he and other purchasers of defendant's products did not get the benefit of their bargain when they purchased defendant's products because they paid more for them than they were worth in reliance on the false "Made in the USA" label. Plaintiff further asserts that he and the unnamed class members will continue to be damaged by defendant's deceptive labeling because defendant "markets pet foods under multiple brands with a wide variety of different ingredients," and thus consumers "cannot know whether labels claiming to be made in the USA are accurate on any of these products."

II.

To state a viable ICFA claim, plaintiff must plead "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). Because plaintiff's ICFA claim sounds in fraud, it must meet the heightened pleading standards of Fed. R. Civ. P. 9(b). *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). And because his unjust enrichment claim is based on the same conduct as he asserts in support of his ICFA claim, the former stands or falls with the latter. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). To be

eligible for injunctive relief under the UDPA, plaintiff must plead that defendant's conduct will likely cause him to suffer damages in the future. *Id.* at 740-41.

The parties agree that the FTC's interpretations of the Federal Trade Commission Act are central to the analysis of plaintiff's claims. Indeed, the first amended complaint opens with a paragraph underscoring the importance of the FTC's published interpretations:

> In determining whether a product may bear a label with the unqualified statement "Made in the USA" without violating Illinois unfair trade practices laws, Illinois law directs the Court to look to federal law under the Federal Trade Commission Act, including the regulations and decisions of the Federal Trade Commission and the federal courts. 815 ILCS 505/2 (requiring that "consideration shall be given to the interpretations of the Federal Trade Commission" concerning unfair or deceptive trade practices. 815 ILCS 505/2). "In determining whether a given course of conduct is unfair, we observe that the Consumer Fraud Act mandates that 'consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E. 2d 951, 960 (Ill. 2002).

FAC at 1-2. Both parties point to the FTC guidance "Complying with the Made in USA Standard," and its Enforcement Policy Statement on U.S. Origin Claims (hereinafter, the "Made in USA Guidance" and "Enforcement Policy Statement," respectively), to support their positions.[1]

---

[1] Both publications are attached as Exh. 1 to defendant's motion to dismiss.

In plaintiff's view, these FTC publications support his claims because they make clear that an unqualified "Made in USA" claim requires that "all or virtually all" of a product's components be of U.S. origin, meaning that the product "should contain no—or negligible—foreign content." Plaintiff argues that defendant's product packaging—which, in the case of the Wellness brand, prominently describes the product as natural food for dogs "with added vitamins, minerals & taurine for wellbeing"[2]—reflects the importance of the allegedly foreign-sourced vitamins, belying any argument that they can be considered "negligible." To the contrary, according to plaintiff, these statements underscore that the foreign-sourced components are "an essential aspect" of the product.

In defendant's diametrically opposing view, however, plaintiff's claims fail as a matter of law under the FTC interpretations because the FAC does not plausibly allege that vitamin C is a "significant part" of the products plaintiff claims to have purchased. Defendant notes that vitamin C is just one of over fifty ingredients identified on the labels. In addition, defendant argues that plaintiff has pled himself out of court with the allegation that vitamin C is no longer produced in the United States. Defendant insists that because

---

[2] The complaint alleges that the packaging of other pet food products manufactured by defendant contains similarly worded descriptions.

5

vitamin C is unavailable from any United States source, its pet food products may properly be labeled "Made in USA" under the FTC's Enforcement Policy Statement, which explains that unless a raw material unavailable in the United States "constitutes the whole or essence of the finished product...consumers are likely to understand that a 'Made in USA' claim...means that all or virtually all of the product, except for those materials not available here, originated in the United States." Enforcement Policy Statement at n. 19.

Plaintiff has the better argument. First, I cannot conclude as a matter of law that the allegedly foreign sourced vitamins are a "negligible" component of defendant's pet food products, especially given the prominent statement on the product labels that apparently emphasize the importance of "added vitamins...for well-being." Second, it is not clear that the standard defendant wishes to apply, which asks whether an imported material "constitutes the whole or essence of the finished product," is appropriate. Indeed, defendant draws that standard from a footnote to the Enforcement Policy Statement, which is directed to "raw materials." Enforcement Policy Statement, at n. 19. The preceding footnote, however, defines raw materials as "products such as minerals, plants or animals that are processed no more than necessary for ordinary transportation." *Id.* at n. 18. The complaint does not allege,

nor do the materials I may consider at this juncture establish, that the ascorbic acid contained in defendant's pet food products meets this definition. To the contrary, the complaint describes vitamin C as a product that is "produced" or "manufactured" in a "plant"—a characterization defendant does not dispute, and that appears at odds with the FTC's definition of "raw materials." For these reasons, I disagree that plaintiff has pled himself out of court and decline to dismiss his claims on the basis that the allegedly foreign-sourced ingredients are negligible as a matter of law.[3]

Nor am I persuaded that plaintiff's ICFA claim fails to satisfy Rule 9(b). All agree that plaintiff must adequately describe the "circumstances constituting fraud," including the "who, what, when, where, and how" of the fraud. *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011). The FAC meets this standard, as it clearly and specifically describes defendant's fraud as falsely claiming that three specific brands of pet food manufactured by defendant are "Made in the USA," when, in fact,

---

[3] I note here that while vitamin C is the only ingredient plaintiff alleges could not have been sourced from the United States, his allegation that vitamins are sold in "packs" supports a plausible inference that other vitamins used in defendant's pet food products are also foreign-sourced.

non-negligible ingredients in those products are foreign-sourced.[4] That is sufficient.

Where plaintiff's claim loses traction, however, is on the issue of actual damages. To prevail on an ICFA claim, it is not enough to establish a violation of the statute; plaintiffs must also plead and prove actual damages, i.e., "actual pecuniary loss." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Plaintiff does not allege that he would not have bought defendant's pet food products had he known they contained foreign-sourced vitamins. And while he alleges that he (and other consumers) are *willing* to pay a premium for goods made in the United States, he stops short of alleging that he *in fact* paid more for defendant's pet food products because he believed they were American-made. Indeed, he does not claim that defendant charged more for its pet food products because they were (supposedly) "Made in the USA," nor does he claim that comparable pet food products that lacked domestic-source designations were less expensive. *See Demedicis v. CVS Health Corp.*, 2017 WL 569157, at *3 (N.D. Ill. Feb. 13, 2017) (Darrah, J.) (dismissing ICFA claim for failure to plead actual damages where plaintiff did not claim that products "were more expensive

---

[4] In addition to the Wellness brand plaintiff allegedly purchased, he identifies Eagle Pack dog food and Holistic Select dog food as other brands containing foreign-sourced ingredients despite bearing "Made in the USA" labels. To the extent plaintiff intended his claims to encompass other, unidentified brands, I agree that such claims are inadequately pled.

because they were marked 'Made in U.S.A.'"); *cf. McDonnell v. Nature's Way Products*, LLC, No. 16 C 5011, 2017 WL 1149336, at *3 (N.D. Ill. Mar. 28, 2017) (Ellis, J.) (allegations that plaintiff "paid more for the products than they were actually worth" and "would not have purchased the vitamins at the price she paid if she had known that they contained foreign-sourced vitamins" sufficient to plead actual damages).

While it is true that, as in *McDonnell*, plaintiff claims to have "paid more for the products than they were actually worth"),[5] without any factual foundation to moor his subjective estimation of the products' worth, I find this allegation too speculative to support an inference of actual damages. *See Moyer v. Michaels Stores, Inc.*, No. 14 C 561, 2014 WL 3511500, at *7 (N.D. Ill. July 14, 2014) (dismissing ICFA claim for failure to plead sufficient facts to support inference that plaintiff paid a higher price as a result of defendant's misconduct); *In re Barnes & Noble Pin Pad Litigation*, No. 12 C 8617, 2013 WL 4759588, at *5 (no actual injury where plaintiffs did not allege that defendant charged a higher price for goods paid for with credit).

For these reasons, plaintiff fails to state viable claims under ICFA or similar consumer protection statutes in other

---

[5] That these allegations are identical is unsurprising: the same law firm represents the plaintiffs in *Demedicis*, *McDonnell*, and this case, and all involve products with "Made in U.S.A." claims that allegedly contain foreign-sourced vitamin C.

states, and fails to state a claim for unjust enrichment. In addition, plaintiff's UDTPA claim for injunctive relief fails because he has not adequately pled a likelihood of future damages as a result of the alleged fraud. *See McDonnell*, 2017 WL 1149336, at *2 (citing, *inter alia*, *Camasta* 761 F.3d at 740-41 (plaintiff not entitled to injunctive relief on UDTPA claim where he was aware of defendant's sales practices and allegations of future harm were speculative); and *Demedicis,* 2017 WL 569157, at *2 (dismissing UDTPA claim because plaintiff did not allege "that he is likely to keep buying products from Defendants with the knowledge of their allegedly deceptive practices")).

III.

For the foregoing reasons, defendant's motion to dismiss is granted. Defendant's motion to strike class allegations is denied as moot.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: April 21, 2017

10